IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-00410-RPM-BNB

TRUSTEES OF THE COLORADO LABORERS' HEALTH AND WELFARE TRUST FUND,
TRUSTEES OF THE COLORADO CEMENT MASONS' PENSION TRUST FUND,
TRUSTEES OF THE COLORADO CEMENT MASONS' JOINT APPRENTICESHIP TRUST FUND, and
OPERATIVE PLASTERS & CEMENT MASONS INTERNATIONAL ASSOCIATION, LOCAL UNION #577,

Plaintiffs,

v.

METRO CONCRETE WORKS, INC., a dissolved Colorado corporation, and
SUSAN SUKUT, an individual

Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the **Motion for Default Judgment** (the "Motion"), filed June 1, 2005. I held an evidentiary hearing on the Motion on July 19, 2005, and allowed the plaintiffs to submit supplemental affidavits on the issue of interest on or before July 22, 2005. I ordered supplemental briefing on the issue of defendant Susan Sukut's individual liability, which was completed on August 8, 2005. Now, I respectfully RECOMMEND that the Motion be GRANTED and that a default judgment pursuant to Fed. R. Civ. P. 55(b) be entered in favor of the plaintiffs and against the defendants.

On May 19, 2005, the Clerk of the Court entered a default pursuant to Fed. R. Civ. P. 55(a) against Metro Concrete Works, Inc. ("Metro Concrete"), a dissolved Colorado corporation, and Susan Sukut, an individual, for failing to file an answer or otherwise defend the action. The

plaintiffs moved for entry of a default judgment on June 1, 2005.  By order dated June 7, 2005, I set the Motion for a hearing on July 19, 2005 at 10:00 a.m.  The defendants were given notice of the hearing; defendant Susan Sukut appeared personally; but she presented no evidence or argument.  No one appeared on behalf of Metro Concrete.

**LEGAL STANDARD**

The entry of a default judgment is controlled by Fed. R. Civ. P. 55(b), which provides in relevant part:

> Judgment by default may be entered as follows:
> \*   \*   \*
> (2) By the Court.  In all other cases [not subject to subpart (b)(1)] the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein.  If the party against whom judgment by default is sought has appeared in the action, the party
> . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.  If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Rule 55(a), Fed. R. Civ. P., allows a default against a party when that party has "failed to plead or otherwise defend" itself.  A trial court is vested with broad discretion in deciding whether to enter a default judgment.  <u>Grandbouche v. Clancy</u>, 825 F.2d 1463, 1468 (10th Cir. 1987).

"Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief."  10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2688 at p.63; accord Olcott v. Delaware Flood Co., 327 F.3d 1115, 1125 n.11 (10th Cir. 2003)(stating that "[a]fter an entry of default, a defendant cannot defend a claim on the merits," citing Jackson v. FIE Corp., 302 F.3d 515, 514-25 (5th Cir. 2002)).  In addition:

> Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. . . .  Once the court determines that a judgment by default should be entered, it will determine the amount and character of the recovery that should be awarded.

10A Wright, Miller & Kane, supra.

**FINDINGS AND CONCLUSIONS**

1. This action was commenced by the filing of a complaint on March 3, 2005. Jurisdiction exists pursuant to 29 U.S.C. § 185 (Labor-Management Relations Act); 29 U.S.C. § 1132(e)(ERISA); and 28 U.S.C. §§ 1331 (federal question) and 1337.

2. The defendants each were served with a summons and a copy of the complaint on or before April 18, 2005.  Returns of Service, filed April 22, 2005.  The Clerk of the Court entered a default against both defendants pursuant to Fed. R. Civ. P. 55(a) on May 19, 2005.

3. The defendants are not infants, incompetent persons, officers or agencies of the United States or the State of Colorado, or in the military service.  Plaintiffs' Exh.1, Affidavit of Sandra G. Brown (hereafter "Brown Aff."), at ¶18.

4. Susan Sukut formerly was known as Susan Korth.  Complaint, ¶7.

5.     Susan Sukut is the primary owner and officer of Metro Concrete. Id. In that capacity, on May 1, 1998, Sukut (then known as Susan Korth) executed on behalf of Metro Concrete the 1998-2001 Building Construction Agreement for the Operative Plasterers and Cement Masons Local Union #577 (the "CBA"). Id. at ¶9; Plaintiffs' Exh.2, Affidavit of Pete Mustacchio (hereafter "Mustacchio Aff."), at ¶7.

**Administrative Dues**

6.     Pursuant to the CBA, Metro Concrete was obligated to deduct administrative dues from the weekly wages of its employees for payment to the Operative Plasterers & Cement Masons International Association, Local Union #577 (the "Union"). Complaint, ¶11; Mustacchio Aff. at ¶9.

7.     Metro Concrete has failed to pay administrative dues to the Union for the period of time from October 1998 through August 16, 2002, in the amount of $9,391.22. Complaint, ¶26; Plaintiffs' Exh.3, Affidavit of Kurt D. Needles, C.P.A. (hereafter "Needles Aff.") at ¶13.

**Fringe Benefit Contributions**

8.     Also pursuant to the CBA, Metro Concrete was obligated to contribute to the Colorado Laborers' Health and Welfare Trust Fund; the Colorado Cement Masons' Pension Trust Fund; and the Colorado Cement Masons' Joint Apprenticeship Trust Fund (the "Funds"). Complaint, ¶¶12-13; Brown Aff., ¶¶8-9. Specifically, the CBA provides:

> It is understood and agreed that the Employer [Metro Concrete] is required to report each straight hour worked and each overtime hour worked by each employee and to pay contributions thereto into each of the aforesaid trusts. . . .

Mustacchio Aff., ¶ 11; Plaintiffs' Exh.2B at p.12.

8.     Metro Concrete was obligated to submit to the trustees of the Funds monthly

4

reports setting forth the number of hours of covered employment performed by all employees and the amount of contributions due to the plaintiffs as a result of such employment. Complaint, ¶14; Brown Aff., ¶8. Metro Concrete also was obligated to submit with each monthly report payment of all benefit contributions due. Complaint, ¶15; Brown Aff., ¶9. The benefit contributions claimed here are employee contributions owed to the Funds. Complaint, ¶37-38.

10. Metro Concrete has failed to submit the required monthly reports and to pay the required benefit contributions to the Funds for the period of time from July 1998 through August 16, 2002. Complaint, ¶23; Brown Aff., ¶11. The unpaid benefit contributions are in the following amounts:

| | |
|---|---|
| Colorado Laborers' Health and Welfare Trust Fund: | $19,275.89 |
| Colorado Cement Masons' Pension Trust Fund and Colorado Cement Masons' Joint Apprenticeship Trust Fund: | $13,669.11 |
| TOTAL | $32,945.00 |

Needles Aff., ¶11.

**Interest**

11. Pursuant to the CBA, the trustees of the Funds are entitled to recover interest at the rate of 18% per annum for Metro Concrete's delinquent fringe benefit contributions. Brown Aff., ¶13. Interest is due in the following amounts:

| | |
|---|---:|
| Colorado Laborers' Health and Welfare Trust Fund: | $13,676.95 |
| Colorado Cement Masons' Pension Trust Fund and Colorado Cement Masons' Joint Apprenticeship Trust Fund: | 9,896.41 |
| TOTAL | $23,573.36 |

Submission of Supplemetnal Affidavit of Kurt D. Needles, C.P.A., filed July 19, 2005, at Exh.1 (hereafter "Needle's Supp. Aff."), ¶¶9-10.

**Liquidated Damages**

12.     Section 1132(g)(2)(C), 29 U.S.C., allows the trustees of the Funds to recover an additional amount equal to the greater of the interest on unpaid benefits or liquidated damages. In this case, interest on the unpaid benefits exceeds the liquidated damages, and the trustees have elected to recover interest in the total amount of $23,573.36 in lieu of liquidated damages. Motion, ¶¶36-37; Needle's Supp. Aff. at ¶11.

**Attorneys' Fees and Costs**

13.     The trustees of the Funds also are entitled to recover their reasonable attorneys' fees, audit costs, and other expenses incurred in collecting fringe benefits due.  Brown Aff., ¶15.

14.     In this case, the trustees have incurred attorneys' fees in the amount of $3,310.50, and costs in the amount of $387.58.  Plaintiffs' Exh.4, Affidavit of Miranda K. Hawkins (hereafter "Hawkins Aff."), at ¶¶4-5.  I have reviewed the time records supporting the claimed attorneys' fees and costs--totaling $3,698.08--and I have determined that they are reasonable. The trustees also have incurred reasonably necessary audit costs of $1,555.90.  Needles Aff., ¶15.

**Additional Audit of Metro Concrete's Books and Records**

15. The trustees of the Funds may audit the books and records of Metro Concrete to confirm the total amount of fringe benefit contributions due and owing. Brown Aff., ¶16.

16. For the period of time from August 17, 2002, to the present, Metro Concrete has failed to submit any employer reports or payments of fringe benefit contributions to the trustees. Id. at ¶12.

17. Pursuant to 29 U.S.C. § 1132(a)(3), the trustees are entitled to an injunction to enforce any provisions of an employee benefit plan. The trustees seek a mandatory injunction requiring Metro Concrete to submit to an audit of benefit contributions due but unpaid for the period August 17, 2002, to the present. Such an audit is necessary in view of Metro Concrete's failure to provide monthly reports as required by the CBA. Brown Aff., ¶¶11-12.

**Personal Liability of Susan Sukut**

18. A fiduciary under an ERISA plan is defined to include a person who has "any discretionary authority or discretionary control" respecting plan assets or the disposition of plan assets. 29 U.S.C. § 1002(21)(A)(i). Plan assets include "amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." 29 C.F.R. 2510.3-102(a). Plan assets include employee contributions such as those at issue here. ITPE Pension Fund v. Hall, 334 F.3d 1011, 1014 n.1 (11th Cir. 2003). The Tenth Circuit Court of Appeals has recognized that an employer entrusted with employee contributions to an ERISA plan is acting as a fiduciary under ERISA. In re Luna, 406 F.3d 1192, 1206 n.134 (10th Cir. 2005).

19. The unrefuted allegations of the complaint are that Susan Sukut exercised discretionary authority with respect to employee contributions withheld by Metro Concrete, which are plan assets, in the following ways:

Susan Sukut

  a) unilaterally decided not to pay fringe benefit contributions to the Funds in violation of the CBA;

  b) executed the CBA on behalf of Metro Concrete;

  c) is the primary owner and officer of Metro Concrete;

  d) made decisions with respect to whom to pay with the money that she received for construction projects and for which she employed cement masons;

  e) unilaterally decided not to pay fringe benefit contributions to the Funds in violation of the CBA, Trust Agreements, and 29 U.S.C. § 1145;

  f) used money otherwise payable to the Funds to pay other creditors of Metro Concrete; and

  g) failed to segregate fringe benefit contributions from Metro Concrete's general operating account.

Complaint, ¶¶33 and 39.

20. Sukut breached her fiduciary duties by failing to pay benefit contributions to the Funds. 29 U.S.C. § 1104(a)(1)(A)(i) (requiring a fiduciary to act solely in the interests of plan participants and beneficiaries for and for the exclusive purpose of providing benefits to participants and their beneficiaries; 29 U.S.C. § 1106(b)(1) (prohibiting a fiduciary from dealing with plan assets in his own interest or for his own account).

21.     Sukut is personally liable for the losses to the plan resulting from her breaches of fiduciary duty by failing to pay benefit contributions to the Funds.  29 U.S.C. § 1109(a); <u>Lopresti v. Terwilliger</u>, 126 F.3d 34, 40 (2d Cir. 1997).

22.     Sukut's personal liability is limited to her breaches of fiduciary duty in connection with plan assets.  The administrative dues claimed by the trustees are not plan assets, and the trustees do not assert that Sukut is personally liable for the unpaid dues in the amount of $9,391.22.

**RECOMMENDATION**

I respectfully RECOMMEND that the Motion be GRANTED and that a default judgment be entered in favor of the plaintiffs and against the defendants as follows:

1)      Against **Metro Concrete** for unpaid administrative dues in the amount of **$9,391.22**; and

2)      Against **Metro Concrete** and **Susan Sukut, jointly and severally**, in the total amount of **$85,345.70**, made up of the following:

        a)   Unpaid fringe benefit contributions to the Colorado Laborers' Health and Welfare Trust Fund in the amount of $19,275.89;

        b)   Unpaid fringe benefit contributions to the Colorado Cement Masons' Pension Trust Fund and Colorado Cement Masons' Joint Apprenticeship Trust Fund in the amount of $13,669.11;

        c)   Interest due on the delinquent fringe benefit contributions to the Colorado Laborers' Health and Welfare Trust Fund in the amount of $13,676.95;

        d)   Interest due on the delinquent fringe benefit contributions to the Colorado Cement Masons' Pension Trust Fund and Colorado Cement Masons' Joint Apprenticeship Trust Fund in the amount of $9,896.41;

      e)      Interest in lieu of liquidated damages in the amount of $23,573.36; and

      f)      Attorneys' fees, costs, and reasonable audit costs in the amount of $5,253.98.

I further RECOMMEND that a mandatory injunction be entered in favor of the plaintiffs and against Metro Concrete requiring Metro Concrete and its agents, representatives, and employees to produce the following documents and materials to the plaintiffs at CompuSys of Colorado, Inc., 2821 South Parker Road, Suite 1005, Aurora, Colorado, to allow the Trustees to determine all amounts due for fringe benefit contributions for the period of time from August 17, 2002, to the date of the audit:

      a)      All payroll records, including employee time cards, copies of all pay checks issued t employees and copies of all other checks evidencing payments to employees;

      b)      All cash disbursement journals or ledgers; and

      c)      All State of Colorado Unemployment Insurance Contribution Reports.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review

by the district court or for appellate review.  United States v. One Parcel of Real Property, 73

F.3d 1057, 1060 (10th Cir. 1996).

     Dated August 10, 2005.

                                           BY THE COURT:

                                           /s/ Boyd N. Boland
                                           United States Magistrate Judge